IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**WILLIAM EMIL SAMLAND, III**,

    Plaintiff,

v.                                                                                              CIV 13CV648 JB/CEG

**JANE DOE; JOHN DOE #1; JOHN DOE #2;
U.S. CUSTOMS & BORDER PROTECTION,**

    Defendants.

**PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** comes before me on an Order of Reference issued pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), and directing me to "perform any legal analysis required to recommend to the Court an ultimate disposition" of any motions filed in this case. *See* Doc. 4. Before the Court is pro se plaintiff and Colorado citizen William Emil Samland, III's application seeking authorization to proceed *in forma pauperis* ("IFP") with this litigation, *i.e.*, without prepaying costs or filing fees, filed July 17, 2013 [ Doc. 2] (hereinafter "motion to proceed IFP"). When determining whether to grant permission to proceed IFP, the Court must "review the affidavit and screen [the] case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). Screening the case under Section 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or

---

[1] Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed.

1

malicious, . . . fails to state a claim on which relief may be granted; or [ ] seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312.

Because it appears that Samland can afford to pay the filing fees, and because his Complaint fails to state a cognizable federal claim, I recommend that his motion to proceed IFP be denied and the Complaint be dismissed. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal under § 1915(e) is now mandatory).

I.   **APPLICABLE LEGAL STANDARDS**

A party applying to proceed IFP must show that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [ ] reject[ed] the "no set of facts" language of *Conley* [*v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:

> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

I have applied this same standard in my review under § 1915(e)(2) to determine whether Samland has stated a cognizable federal claim. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). I will accept as true Samland's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to him. *See id.* But I "will not supply additional facts, [or] construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The Supreme Court has held that district courts should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, the court "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them  *Ashcroft v. Iqbal*, 556 U.S.662, 680 (2009). Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating,

3

"[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss.  But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

## II. ALLEGATIONS IN THE COMPLAINT

Samland complains about his detention and questioning by Border Patrol agents on July 13, 2012 at the Las Cruces border-patrol checkpoint, which is located 22 miles west of Las Cruces on I-10.  Compl. at 1-2, ¶¶ 1, 3.  Samland was a passenger on a Greyhound bus when it was routinely stopped at the permanent border-patrol checkpoint.  *See id.* at 3, ¶ 11.  The bus was "referred to a secondary inspection," where Jane Doe and John Doe #1, both Border-Patrol Agents, boarded the bus and John Doe #1 announced that they were conducting "an 'immigration inspection.'" *Id.* at 4, ¶ 13.  Samland states that, when Jane Doe started asking Samland questions, he immediately "invoked my right to have an attorney present," "advised her not to question me," and refused to answer questions even when she "belligerently continued to interrogate" him.  *Id.* at ¶ 15.  Jane Doe then ordered Samland to get off the bus with his possessions and took him to a "holding cell" inside the checkpoint office.  *Id.* at ¶¶ 17-18.  Jane Doe told him he was being detained "for not answering questions."  *Id.* at ¶ 20.  Samland says that he is Caucasian, "not foreign looking," and speaks English fluently "without a foreign accent."  *Id.* at 4-5, ¶ 22.

John Doe #1 also tried to "interrogate" Samland, and told him that, if Samland did not answer questions without having an attorney present, he "would be sent off site, and the bus sent off without [Samland]."  *Id.* at 5, ¶¶ 24, 25.  "Supervisor" John Doe #2 also

4

"interrogated" Samland, and told Samland that John Doe #2 "knew [Samland] was from here, and told [Samland] to just tell [John Doe #2] that so [Samland] could go," and that he also said, "aren't you proud to be an American?" *Id.* at ¶¶ 27, 28, 30. John Doe #2 told Samland to leave, and Samland "got back on the bus and left the checkpoint." *Id.* at ¶¶ 31, 32. The agents were wearing uniforms and "holstered guns." *Id.* at 33. Samland says that, while he was in the holding cell, he "started shaking . . . out of anxiety and terror" that has caused post-traumatic stress syndrome. *Id.* at 5-6, ¶¶ 35,36.

Samland contends that his December 2012 FOIA requests for "documentation of the incident in question" and the names of the agents who "abducted" him from the bus still have not been answered. *Id.* at 6-7, ¶¶ 43-47.

### III.  ANALYSIS

#### A.  It appears that Samland is not indigent.

Samland, who is 35 years old and has no dependents, receives a net income of almost $970/month from disability payments. *See* Doc. 2 at 2. He has $30 in cash and $66 in his two checking accounts. *See id.* at 3. He pays $258/month for rent and utilities. Because he receives disability benefits and Medicare, his medical expenses and Medicare premiums most likely are paid as part of his disability benefits. Samland spends $150/month on food. *See id.* at 4. And although he does not use his Chevrolet Prism for a job, Samland states that he spends $110/month on fuel and $63/month on car insurance. *See id.* Samland spends $51.49/month on recreation, and pays $58/month toward credit-card debt and $20/month to his mother for a loan. *See id.* On these facts, Samland has failed to show that he cannot, because of poverty, provide

5

himself with the necessities of life and pay the filing fees.  See *Adkins*, 335 U.S. at 339.  Therefore, I recommend denying Samland's motion to proceed IFP and dismissing his case without prejudice.  See § 1915(e)(2)(A); *Trujillo*, 465 F.3d at 1217 n. 5.

But even if Samland could show that he is indigent, I would recommend dismissing the case.

### B.  Samland fails to state a claim for constitutional violations.

Samland files this action seeking $1,000,000 in compensatory damages and $2,000,000 in punitive damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which " recognized for the first time an implied  private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  The eight *Bivens* counts include kidnapping, false arrest, false imprisonment, illegal seizure, right to counsel, harassment, negligence, and negligent supervision.  The factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." *Iqbal*, 556 U.S. at 676.  The Tenth Circuit Court of Appeals has set out a Fourth Amendment analysis in relation to detentions and routine questioning at a border checkpoint.

> A detention at a border checkpoint is a seizure under the Fourth Amendment.  However, because the public has a substantial interest in protecting the integrity of our national borders, and the intrusion upon one's right to privacy and personal security by a routine border inspection is minimal, a border patrol agent may briefly detain and question an individual without any individualized suspicion as required under *Terry v. Ohio*.  The Fourth Amendment protects an individual's liberty at a border checkpoint by limiting the scope of the detention.
> . . . .
> A routine checkpoint stop must be brief and unintrusive.  It generally involves questions concerning the motorist's citizenship or immigration status, and a request for documentation. . . . [A] few brief questions

concerning such things as . . . destination, and travel plans may be appropriate if reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband. The Tenth Circuit has further held if an agent observes "suspicious circumstances," the agent may briefly question the motorist concerning those suspicions and ask the motorist to explain. The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances.  While there is no single definition of what constitutes a "suspicious circumstance," border patrol agents are given deference in relying upon their law enforcement training and past experience in deciding whether a suspicious circumstance exists. FN6

> FN6. A "suspicious circumstance" is not equivalent to the "reasonable suspicion" standard. The presence of a suspicious circumstance allows a border patrol agent to ask a few additional questions concerning the suspicion during the course of a routine customs inspection. Since the additional questions do not add significantly to the length or intrusiveness of the detention, the more rigid Fourth Amendment requirements of probable cause or reasonable suspicion are not required.

. . . . Border Patrol Agents may inspect vehicles at border checkpoints without individualized suspicion and have virtually unlimited discretion to refer cars to the secondary inspection area in order to effectuate the inspection.

*United States v. Rascon-Ortiz*, 994 F.2d 749, 752-54 (10th Cir. 1993). Thus, in the *Rascon-Ortiz* case, in which the driver and passenger of a car exhibited "nervous behavior," the Tenth Circuit found that the behavior constituted a suspicious circumstance as a matter of law and concluded that,

> [o]nce the suspicious circumstances arose, Agent Hooper was entitled to further detain the Appellees in order to briefly investigate his suspicions. The fact that the Appellees were directed to the secondary inspection area is immaterial. Since Agent Hooper's actions were within the limits of a routine checkpoint stop, there was no Fourth Amendment violation.

*Id.* at 753.

Samland believes that did not have to answer any questions posed by the Border Patrol without having a lawyer present, and that routine questioning at a border

7

checkpoint regarding his identity and country of origin violate his Fourth-Amendment rights, but he is wrong.  Samland's Complaint describes a detention and investigatory scenario that has been repeatedly approved of by the courts: a "routine permanent checkpoint stop" that was "brief and unintrusive" and that involved questions concerning a bus passenger's "citizenship or immigration status, and a request for documentation."  *United States v. Hernandez*, 7 F.3d 944, 946 (10th Cir. 1993).  "When a bus enters the checkpoint and is referred to the secondary inspection location, border patrol agents are permitted to board the bus, question its passengers regarding citizenship and immigration status, make a brief visual inspection of their surroundings, and question the passengers regarding suspicious circumstances."  *Id; see United States v. Ray*, 973 F.2d 840, 842-43 (10th Cir. 1992) (holding that border-patrol agents have authority to question bus passenger at permanent checkpoint, even without individualized suspicion, where bus was stopped as result of routine immigration inspection and defendant was in public passenger compartment of bus).   When Samland refused to answer questions regarding his citizenship, the agents were well within their authority to briefly remove him from the bus and ask him the questions inside the checkpoint, as refusal to answer a simple question regarding citizenship without a lawyer present would certainly reasonably raise the suspicions of any law-enforcement officer.

   Samland makes much of the fact that he is Caucasian and speaks English without a "foreign" accent, which he thinks creates an obvious conclusion that he is an American.  But many, if not the majority of, Canadians also are Caucasian and speak English as their primary language without a foreign accent, yet they must have a visa or passport to travel in this country.

No allegations in Samland's Complaint indicate that the Border Patrol Agents exceeded their authority, used excessive force while questioning Samland, or improperly extended Samland's detention. There is no cause of action based on negligence under *Bivens* because *Bivens* provides redress only for "violation of any rights secured . . . under the United States Constitution." *Siegert v. Gilley*, 500 U.S. 226, 227 (1991) (holding that *Bivens* complaint had to be dismissed because plaintiff alleged facts supporting only defamation, which "by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation"), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). As a matter of law, therefore, Samland has failed to state a cognizable *Bivens* claim against the individual officers.

As to his *Bivens* claims against the U.S. Customs and Border Protection Agency, such claims "lie only against federal actors in their individual capacities, not in their official capacities and not against the federal agencies for which they work." *Punchard v. United States Bureau of Land Mgmt.*, 180 Fed. App'x 817, 819, 2006 WL 1389107, **2 (10th Cir. May 18, 2006).

**C. Samland's FOIA claim is moot.**

"The FOIA does not authorize an award of damages for a violation thereof." *Wren v. Harris*, 675 F.2d 1144, 1142 (10th Cir. 1982). Although Samland also seeks injunctive relief to force the release of the "full legal names" of the Border Patrol Agents who questioned him (which he could also have obtained by using simple discovery procedures in the courts after filing suit), because the purpose of his FOIA request was to obtain the names for suit, and he cannot state a cognizable cause of action against

9

the Agents based upon the set of facts set forth in his Complaint, his request for injunctive relief is moot.

I recommend that the Court deny permission to proceed IFP and dismiss Samland's Complaint with prejudice and without giving him an opportunity to amend his Complaint because amendment would be futile.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE